CITY OF INDIANAPOLIS *v.* COLLEGE PARK LAND
COMPANY.

[No. 23,194. Filed January 17, 1918. Rehearing denied
June 28, 1918.]

1. MUNICIPAL CORPORATIONS.—*Powers.*—*Derivation.*—The powers of cities and towns are expressly conferred by legislative enactment, or implied when necessary to accomplish some municipal purpose. p. 547.

2. MUNICIPAL CORPORATIONS.—*Powers.*—*How Exercised.*—Where a power has been expressly conferred upon a municipality by the legislature without prescribing the manner of exercise thereof, or where the exercise of a power is essential by implication to carry out a municipal duty, the mode of exercise must be reasonable, as a question of law. p. 547.

3. MUNICIPAL CORPORATIONS. — *Expressed Powers.* — Where the legislature, under sanction of the Constitution, provides that a particular thing may be done in a specified way, neither the enactment, nor an ordinance passed pursuant thereto, will be

# 542 SUPREME COURT OF INDIANA,

declared void as unreasonable or as against public policy. p. 547.

4. MUNICIPAL CORPORATIONS.—*Powers.—Mode of Exercise.*—A statutory mode of exercising a municipal power must be followed. p. 547.

5. MUNICIPAL CORPORATIONS.—*Powers.—Construction of Statute.*—A statute authorizing cities to compel the owners of abutting property to make connections with gas mains, etc., or, on their default, authorizing the city officials to do so at the owners' expense, will be strictly construed. p. 548.

6. MUNICIPAL CORPORATIONS. — *Gas. — Ordinances.—Validity.*— Subdivision 31 of §8655 Burns 1914, Acts 1905 p. 246, authorizing cities to compel the owners of abutting property to make connections with gas mains, etc., or, on their default, authorizing the city officials to do so at the owner's expense, does not authorize the enactment of an ordinance provision compelling a gas company to make the connections. p. 549.

7. MUNICIPAL CORPORATIONS. — *Ordinances. — Construction.* — Where void provisions of a city ordinance are inseparable from the valid provisions, the entire ordinance will be held void; hence, an invalid ordinance provision, requiring a gas company to make connections with abutting property, rendered void the entire ordinance, which also covered sewer and water connections, since the purpose of the ordinance was to require all surface piping to be laid before the permanent improvement of the street. p. 550.

8. MUNICIPAL CORPORATIONS. — *Ordinances. — Validity.*—A city ordinance, requiring owners of abutting property to make sewer connections within thirty days after a resolution for street improvements, and authorizing the city, on default of any such owner, to make the connections under the improvement contract, and to assess the costs against the defaulting owner, was a reasonable exercise of the power conferred by subdivision 31 of §8655 Burns 1914, Acts 1905, p. 246. p. 550.

9. CONSTITUTIONAL LAW. — *Impairing Contract Obligations. — Franchises.*—The franchise contract of a gas company is not impaired by an act that became effective before the franchise was granted. p. 552.

10. WATERS AND WATERCOURSES. — *Franchise Contract. — Construction.*—A franchise contract, requiring a water company to furnish water upon streets where its pipes were laid, and in such localities off the same as the citizens might conduct the water to, does not require the company to pay the piping between its mains and the property lines. p. 552.

From Marion Superior Court (104,513) ; *Theophilus J. Moll,* Judge.

Proceedings on appeal to the superior court from an assessment by the board of public works against the College Park Land Company. From a judgment reducing the assessment, and an order denying a new trial, the city appeals. *Reversed.*

*William A. Pickens, Walter Meyers, Russell J. Ryan* and *Paul G. Davis,* for appellant.

*Linton A. Cox,* for appellee.

LAIRY, J.—Appellee was the owner of certain lots and parcels of land abutting on a part of Thirty-Fifth street in the city of Indianapolis, which was improved by paving at the expense of abutting property under the provisions of an act concerning municipal corporations, approved March 6, 1905. The general contract for the improvement included the making of certain connections between the gas mains and the water mains located in the street improved with the property line of the abutting property, and the assessment against the property of appellee as shown by the final assessment roll approved by the board of public works of the city included the cost of such connections made to the property of appellee.

The Marion Superior Court on appeal held that the board of public works had no power or authority to include the cost of making water and gas connections in the assessment for the street improvement against the abutting lots of appellee, and reduced the assessments against the various lots in an amount equal to the assessment against each on account of the water and gas connections.

Appellant filed its motion for a new trial alleging that the decision of the trial court was not sustained by

sufficient evidence and was contrary to law. The court overruled this motion and that action of the court is assigned as error in this appeal.

The question here presented rests upon the validity of certain city ordinances passed in 1906, 1907, and 1915.

It is shown by the record herein that appellee owned five lots abutting on Thirty-Fifth street, which had been improved by paving, and that the hearing on the primary assessment roll was held on October 2, 1916; that an assessment for water connections was made in the sum of $18.75 for each of three lots, $21 for two connections to another, and $55.50 for three connections to the other, while each lot was assessed $5.50 for a gas connection. It appears that the Citizens Gas Company was operating under a franchise contract dated August 30, 1905, which provides that all service pipes connecting with its mains shall be placed and located at such points and locations as shall meet the approval of the owner of the property whose premises are to be connected by such service pipes and lines to property lines of streets and alleys, and that such service pipes and curb boxes shall be put in at the expense of the company to the property line. It also provides that the company shall provide all meters and safety devices free of charge to each consumer of gas, but may require a deposit of not to exceed $5 for each meter furnished, which deposit so required was to be held and returned to the consumer upon surrender by him of the meter in the same condition as when installed, natural wear excepted. The gas company operating under this franchise maintained a pipe line on the street upon which the property of appellee abutted and for the improvement of which such property was assessed. The cost of making connections between gas mains and the property line of the lots was included in the assessment as hereinbefore stated. It is further shown that at and

prior to. the date of the improvement the Indianapolis Water Company maintained a water main upon and along the street in question, and that the assessments made against the lots of appellee for such improvement included the cost of the connections between the water main and the property line of said lots. This water company was at the time operating under a franchise contract entered into between it and the city on January 3, 1870, which contained the provision following:

"The company shall furnish to the citizens of the city upon the several streets and avenues in which pipes and watercourses may be laid, and in such localities off the same as the citizens may conduct the water to, such quantities of water as they may desire."

In 1906, the city passed an ordinance providing that gas and water companies maintaining mains in any street which should be permanently improved by paving should be required at the expense of such companies to make the connections between their mains and the property lines of the abutting lots after the contract for the improvement was let. The ordinance also provided that the water company, in such case, should keep an account of the cost of the water connections so made with each abutting property, and that, upon water service being furnished through such connection, it might charge and collect from the owner of such property the cost of such connection before furnishing water service. The ordinance made no such provision with reference to the gas company; the probable reason for the distinction being that the franchise contract under which the gas company was operating required such company to bear the expense of the connections between its street mains and the property line of abutting lots, while the fran-

chise contract of the water company made no such requirement.

In 1907 another ordinance upon the same subject was passed by the city council. By this ordinance the duty to make connections with sewers, water mains, gas mains and other like public conveniences, and to bring them within the curb line, was imposed upon the owners of property abutting upon streets about to be permanently improved by paving. The ordinance required that all such connections be made by the lot owners within thirty days after the adoption by the board of public works of the permanent improvement resolution declaring the intention of making such improvement, including such connections at the expense of abutting property, and that all connections not made by the owner should be included in the general contract for the street improvement and the cost thereof assessed against the abutting property benefited thereby. This ordinance repeals all former ordinances within its purview.

In 1915 the city council passed another ordinance on the subject by which it was made the duty of an owner of property abutting on a street about to be improved to make service connections with sewers and water mains within thirty days after the adoption of a resolution ordering such improvement. This ordinance requires the gas company having or constructing a main on such street or alley to lay a service line from such main to the property line of each and every property abutting on the street or alley about to be permanently improved. In other respects the ordinance is very similar to that of 1907, except that, where connections are made by the contractor as a part of the improvement, it provides that the costs of putting in gas service pipes shall be charged against the gas company, and that the costs of putting in service pipes to sewers, water

mains, and other like public conveniences shall be assessed against the abutting property benefited thereby.

The record discloses that the ordinance of 1915 was held invalid by the Public Service Commission of Indiana as being unreasonable, and that the assessments complained of were made under the provisions of the ordinance of 1907.

The first question to be considered is the validity of the city ordinance of 1915. The law relating to the powers of municipal legislative bodies is settled in this state to the effect following: (1) All powers possessed by cities and towns are expressly conferred by legislative enactment, or implied when necessary to accomplish some municipal purpose. (2) When the legislature by express enactment has conferred a power upon city councils or boards of trustees of towns in general terms without prescribing the manner in which it shall be exercised, the mode of exercising such power must be reasonable as a question of law or the ordinance will be void. The same rule applies to the exercise of a power which is implied as being essential to the carrying out of some municipal duty. (3) When the legislature, under the sanction of the Constitution, provides that a particular thing may be done and points out the way for doing it, courts will not strike down the law, or ordinance passed in pursuance thereof, or abridge the authority, because they may deem it to be unreasonable or against public policy. (4) Where a statute prescribes the mode of exercising a power the mode prescribed must be followed. Chicago, etc., R. Co. v. Town of Salem (1907), 170 Ind. 153, 158, 82 N. E. 913, 19 L. R. A. (N. S.) 658; Pittsburgh, etc., R. Co. v. Town of Crown Point (1896), 146 Ind. 421, 45 N. E. 587, 35 L. R. A. 684; Champer v. City of Greencastle (1894), 138 Ind. 339,

35 N. E. 14, 24 L. R. A. 768, 46 Am. St. 390; *Grossman* v. *City of Indianapolis* (1909), 173 Ind. 157, 162, 88 N. E. 945, 89 N. E. 862; *Ellingham* v. *Dye* (1912), 178 Ind. 336, 374, 99 N. E. 1, 29, Ann. Cas. 1915C 200.

The legislature has expressly conferred upon common councils of cities the power to pass ordinances for certain purposes. §8655 Burns 1914, Acts 1905 p. 246. Among other purposes mentioned, subdivision 31 of the section cited provides that ordinances may be passed "*   *   * To regulate the making of private connections with sewers, gas, water and other like pipes and public conveniences, and to compel owners of property to bring such connections inside the curbs of streets before the permanent improvement thereof; and, on default of the owner's making such connections, to authorize the proper city officials to do so at the owner's expense, and to make such expense a lien on the property, collectible in the same manner as expenses for other street and sewer improvements." The language of a statute granting such power is strictly construed. *Barber Asphalt Pav. Co.* v. *Edgerton* (1890), 125 Ind. 455, 461, 25 N. E. 436. The language quoted does not confer on cities the power to enforce by ordinance or otherwise the payment of the cost of such connections against any persons or corporations in any other manner than by assessments against abutting property.

In the recent case of *City of Angola* v. *Croxton* (1916), 185 Ind. 250, 112 N. E. 385, this court, in discussing the power of the city of Angola to provide by ordinance that all persons owning property fronting and abutting on West Maumee street, which the city contemplated improving by paving, should be required to lay connecting pipes from the water and sewer mains in the street to the inside of the curb line of their re-

MAY TERM, 1918. 549

City of Indianapolis *v.* College Park Land Co.—187 Ind. 541.

spective lots, said: "This statute (subdivision 31 of §8655 Burns 1914, *supra*) expressly conferred upon the city of Angola power to pass the ordinance in question. * * * It was the evident purpose of the legislature to confer the power on cities to enforce the making of these connections in a summary way under the police power. The legislature determined in advance that each lot affected would be specially benefited to the amount of the cost of such connections, and empowered the city to make the improvement and to make the cost thereof a lien against the property benefited on default of the owner's making such connection."

It is contended by appellee that the case last above quoted from did not profess to deal with cases where the expense of connections had been fixed by franchise upon a public utility whose service pipe is to be connected with the property. The ordinance of 1915, *supra,* makes provision for the gas companies of the city to make connections instead of the property owner. The mere reading of the statute, granting the power to enact ordinances for the purpose of compelling the making of water, gas, sewer and like connections to the curb line, will show that the legislature specially granted power to compel the *owners* of property to make the connections, and upon the *owner's* failure the city may do so and assess the cost thereof against the *property* itself. Therefore we are forced to the conclusion that the provision in the ordinance in reference to the gas company being compelled to make the gas connections is a means or mode of exercising the power granted different from that prescribed, and renders that portion of the ordinance invalid. The high dignity of the power attempted to be delegated was not intended to be the prey of an unlimited discretion of an inferior governmental body. The rule applies that,

where the means by which a power granted shall be exercised are specified, no other or different means for the exercise of such power can be. implied. *State, ex rel.* v. *McCormack* (1916), 185 Ind. 302, 113 N. E. 1001.

It is a universal rule of construction that if one section of a legislative act or city ordinance can be separated from the other sections or parts and upheld as valid, it is the duty of the courts to do so. *Smith* v. *George* (1913), 181 Ind. 119, 103 N. E. 949.

On the other hand, if the invalid provisions of the ordinance in relation to the gas company are not distinct and separable from the other portions of the ordinance the entire ordinance is void. *Southern Ind. R. Co.* v. *City of Bedford* (1905), 165 Ind. 272, 75 N. E. 268, 6 Ann. Cas. 509. A consideration of the purpose of the ordinance will show that it was the intent of the common council to require the laying of all service pipes before a street should be permanently improved by paving to the end that it might not be necessary to damage the pavement by making excavations for laying any of such pipes. If the laying of the service pipes connecting abutting property with gas mains cannot be enforced under the provisions of the ordinance, the whole ordinance fails of its purpose. It must be held, therefore, that the entire ordinance of 1915 must fall with the invalid provision.

This brings us to a consideration of the ordinance of 1907, *supra.* Appellee contends that this ordinance is unreasonable because it provides for the putting in of sewer, gas, water and other like pipes and public conveniences before it is certain that the street will be permanently improved, and that it is therefore invalid. The ordinance provides that within thirty days after the adoption of a resolution by the board of public works ordering the permanent improvement,

MAY TERM, 1918.          551

City of Indianapolis v. College Park Land. Co.—187 Ind. 541.

the property owner shall put in the connections, and on default of the owner's making such connections the board shall proceed to do so at the owner's expense and the work shall be included in the general contract for the permanent improvement. It is manifest that the ordinance is not intended to authorize the board of public works to make any contract for putting in such connections until such time as the contract for the permanent improvement is let and that it requires such connections to be made as a part of the improvement only in the event that the owner of the property has failed to make them within the time specified. Under the ordinance the property owner is given an opportunity to elect which of two methods he will pursue in getting the gas, water, sewer and other like pipes and public conveniences connected with his property. If he so elects, he is given a period of thirty days after the adoption of the permanent improvement resolution by the board of public works within which he may personally have the connections made. If he does not need the connections at the time and does not desire to have them made unless the street is improved, he can elect, and does so elect by his failure to make the connections within the prescribed time, to have the city make the connections under its contract for the complete improvement. It certainly cannot be said that this is an unreasonable provision, or that it conflicts with any of the amendments of the street paving laws.

Appellee's contention that this is an unreasonable ordinance, in that it is a blanket ordinance covering all street improvements, is without force. No special reason is shown why the ordinance cannot apply equally as well to one street as to another. The ordinance imposes the duty upon the board of public works of adopting an improvement resolution in which it also declares its in-

tention of making the contemplated connections and giving notice thereof with the other notice of improvement as required by law. It was the evident intent of the council that those aggrieved by the number of connections to be made should present their contentions to the board of public works as in other matters relating to street improvements. There is no doubt that the ordinance is a valid exercise of the power granted and is reasonable in its provisions.

It is asserted that the law under which the ordinance was passed impairs the obligations imposed upon the gas company by the franchise contract under which it was operating. The law in question was approved on March 6, 1905, and became effective on April 15, of the same year; and the record shows that the franchise of the gas company was granted on August 30, 1905. The law being in force prior to the making of the contract involved in the discussion, the constitutional provision to which reference is made can have no application. *Inland Steel Co.* v. *Yedinak* (1909), 172 Ind. 423, 432, 87 N. E. 229, 139 Am. St. 389.

It is suggested by appellee that the franchise of the water company means that the company must pay for the pipe to the property line. The court cannot so construe the franchise provision above quoted, but must hold that the same is silent on the question, and that the only duty thereby imposed on the company in this respect is to furnish to citizens such quantities of water as they may desire upon the streets where its pipes and watercourses may be laid, and in such localities off the same as the citizens may conduct the water to.

In view of what has been said, it is evident that the decision of the trial court is contrary to law and that

the court committed error in overruling appellant's motion for a new trial. The judgment is reversed, with instructions to sustain appellant's motion for a new trial.

Harvey, J., not participating:

NOTE.—Reported in 118 N. E. 356. Municipal corporations: powers, how conferred, 28 Cyc 258; exercise of powers, method, 28 Cyc 275. See under (7) 28 Cyc 372; (8) 28 Cyc 919; (10) 40 Cyc 782.