MONTAGANA, ET AL. *v.* CITY OF ELKHART.

[No. 770A103.  Filed July 27, 1971.]

*Douglas D. Seely, Jr.,* of South Bend, for appellants.

*Paul L. Myers, David A. Denton, F. LeRoy Wiltrout,* all of Elkhart, for appellee.

SULLIVAN, P.J.—In this case the appellant-plaintiffs as taxpayers and residents of the city filed a "complaint for declaratory judgment" to challenge an annexation ordinance of the Elkhart City Council. On Motion of the appellee-defendant, summary judgment was granted on pleading paragraph II of the complaint.[1] In their motion to correct errors, appellants-plaintiffs contended that entry of summary judgment was contrary to law in that the trial court had held it was without jurisdiction to conduct a hearing on the alleged illegality of the annexation ordinance which was sought by non-residents of the annexed territory. It is from the overruling of this motion that appeal is taken.

The primary issue before this court is whether resident taxpayers of a city who are neither residents nor owners of land in the area to be annexed may challenge an annexation ordinance by a taxpayer's suit in a form purporting to be a suit for declaratory judgment and injunctive relief. In dealing with this issue it should be noted at the outset that we do not deem it a function of this court to plot for the appellants or future litigants a course of legal resistance to governmental action which they feel to be erroneous or ill-advised. Our concern extends only to the specific action pursued here and the propriety of the trial court's granting of summary judgment on pleading paragraph II.

1. Summary judgment was also entered on pleading paragraph I which sought to set aside a purchase of certain land by the city upon the grounds that two members of the Elkhart Board of Aviation Commissioners were also sellers of the land. The granting of the motion in that respect is not here contested.

Pleading paragraph II of appellants' complaint is essentially as follows:

"2. That on September 2nd, 1969, the Elkhart City Council adopted an ordinance annexing approximately five hundred eighty-seven (587) acres of land. . . .

\* \* \* \*

"4. That the tract described in said ordinance as tract number seven (7) is thirty (30) feet in width and four hundred (400) feet in length and is the only tract which is contiguous to the City boundaries of the defendant which contiguousness is only thirty (30) feet in length.

"5. The land annexed by said ordinance and the effect thereof is:

  (a) Not in the best interests of the City and/or its taxpayers as a whole;

  (b) The land is not urban in character, being an economic and social part of the annexing city;

  (c) The City is not financially able to provide municipal services to the annexed area within the reasonably near future;

  (d) The area annexed is undeveloped and not needed for development of the City in the near future;

  (e) The lines of annexation are so drawn as not to form a compact area abutting the municipality.

"6. That plaintiffs as residents and taxpayers of said City will become obligated to pay taxes which will be used to provide the usual municipal services to said area even though the annexation is invalid and in excess of the jurisdiction and power of City Council in adopting said ordinance.

"7. That the defendant should be enjoined from exercising any power or jurisdiction over said area so wrongfully annexed and enjoined from expending any tax revenues for providing any improvements or services in the area.

"8. That plaintiffs, as well as other residents and taxpayers, have no adequate remedy at law and will suffer irreparable harm if the defendant is not so enjoined.

"WHEREFORE, plaintiffs as residents and taxpayers pray that the court declare said ordinance invalid and void, permanently enjoin the defendant from exercising any power or jurisdiction in said area, permanently enjoin the defendant from expending any funds for providing services

or improvements in said area and all other just and proper relief."

In properly framing the issue before us, it is necessary to consider the statutory procedure by which remonstrance to an attempted annexation could have been taken at the time this action was filed. According to Ind. Ann. Stat., § 48-702 (Burns 1963), then in effect, remonstrators must have satisfied two requirements if they were to have the merits of their objections considered. They must: (1) have had standing to challenge the annexation; (2) have filed their remonstrance within certain time limits. The trial court by reference to those requirements was obligated to determine if jurisdiction rested with it.

Despite the fact that on the face of their complaint the appellants-plaintiffs would appear to have complied with the latter requirement of the statute, the first requirement—proper standing to challenge—was unsatisfied. Ind. Ann. Stat., § 48-702 (Burns 1963), is specific in its requirement as to who was a permissible remonstrator:

"[A]n appeal may be taken from such annexation by either a majority of the owners of land in the territory or by the owners of more than seventy-five per cent [75%] in assessed valuation of the real estate in the territory, if they deem themselves aggrieved or injuriously affected, . . . ."

The trial court under such statute was obligated to properly determine whether the remonstrating persons fell within either class of authorized remonstrators. *In re Annexation etc.* v. *City of Anderson* (1963), 135 Ind. App. 92, 190 N. E. 2d 428. Such a determination was, in fact, a prerequisite to the judicial recognition that a remonstrance had been formally and properly filed and was sufficient to authorize setting of a hearing date and the issuance of summons to the city as defendant. See *Daubenspeck* v. *City of Ligonier* (1962), 135 Ind. App. 565, 183 N. E. 2d 95.

The appellants-plaintiffs by their own admission represented

neither a majority of the landowners nor were they the owners of 75 per cent of the assessed valuation of the annexed land. Therefore, if their complaint was essentially one of remonstration against the annexation ordinance of the appellee-defendant-city, we must affirm the lower court's dismissal of the complaint for want of jurisdiction.

The appellants, however, assert their action is not one of remonstration but one seeking declaratory judgment for all taxpayers upon the validity of the annexation ordinance. They base their action on IC 1971, 34-4-10-2, being Ind. Ann. Stat., § 3-1102 (Burns 1968) :

> "Any person interested under a deed, will, written contract or other writings constituting a contract, or *whose rights, status or other legal relations are affected by a* statute, *municipal ordinance,* contract or franchise, may have determined any question or construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder." (emphasis supplied)

To obtain relief under the Uniform Declaratory Judgments Act, the plaintiff must have standing within the purview of the aforementioned statute. The recognized criteria for standing have been recited in *Zoercher* v. *Agler* (1930), 202 Ind. 214, 221, 172 N. E. 186:

> ". . . [T]he person bringing the action must have a substantial present interest in the relief sought, such as there must exist not merely a theoretical question or controversy but a real or actual controversy, or at least the ripening seeds of such a controversy, and that a question has arisen affecting such right which ought to be decided in order to safeguard such right."

The required interest of the plaintiff in declaratory judgment actions is normally personal in nature. It is no bar to standing, however, that the interest of the plaintiff is the same as that of the public in general. As was stated further in *Zoercher* v. *Agler, supra:*

"The rule contended for by appellants that the plaintiff must show that he has sustained some injury to his personal or property rights, has been applied in the case of one who brings an action to enforce his private rights; but such a rule does not serve to prevent the bringing of an action which involves the establishment of public rights." 202 Ind. 214, 222.

In *Zoercher*, the taxpayers were unquestionably interested parties since the newly established local tax rate on their property had been modified by action of the State Tax Board, a form of control contended to be unconstitutional. The fixing of local tax rates was held to involve primarily public rather than private rights, and the attack thereon was held to be the proper subject of a declaratory judgment action by representative taxpayers.

The wastage of public money has likewise given rise to taxpayer suits challenging the actions of municipal officials. As stated in *Haywood Publishing Co. v. West* (1942), 110 Ind. App. 568, 576, 39 N. E. 2d 785:

"It is our opinion that the court of equity has jurisdiction to enjoin or invalidate the performance of an act by a public officer, if it is of such a character as to necessarily result in a plain, bald, useless waste of public funds. It is true, the act must be such that there can be no fair question in the judgment of reasonable men as to its character. If it is possible for fair minded men to differ in regard to the character or policy of the action in question, then the judgment of the officers should prevail. If, on the contrary, the official act, plainly and beyond all fair controversy, is wasteful and a mere squandering of public funds, then the courts may declare such conduct on the part of such public officials constructively fraudulent."

As the Indiana Declaratory Judgment Act requires that a plaintiff have a "right" affected by an ordinance or statute before declaratory relief can be granted, it would seem that the "right" of the taxpayer *as a personal right* would be insufficient to establish standing. As a *public* right the plaintiff together with the rest of the taxpayers

which he represents would clearly have a right, but not an *unqualified* right.

Our theory of democracy provides that some men shall be elected to represent others in the decision-making processes of government. The underlying premise is that those represented, whether they generally favor or disfavor the philosophy or person of the representatives, shall abide by the decisions of the representatives and their agents and appointees, no matter how distasteful or shortsighted those decisions may be deemed at the time rendered. The discretion of the official in rendering the decision remains nearly inviolable unless there is manifest an obvious abuse of discretion or the decision is illegal.

Municipal taxpayers are people and are not homogeneous in thought or philosophy and do not usually, if ever, find agreement with all decisions of their elected officials regarding their city, the types of services and facilities to be provided, or the proper functions and limitations of government. They may feel wronged by such decisions, especially those involving appropriation of tax money, and, as a result, demand legal remedy. While the law stands ready to right legitimate wrongs suffered by taxpayers through such devices as mandate and prohibition or declaratory or injunctive relief, it must demand that public lawsuits involve a substantial interest or right of the public.

In proper public suits for declaratory judgment reasonable inquiry may be made into the legality of any action taken by elected officials where appropriations have been made but the court may not substitute its discretion for that of the proper officials. Facts concerning jurisdiction or authority of the officials to act may always be considered. It is elemental, however, that the court cannot inquire into the minds of the officials or sift the subjective elements of the decision.

The action of the common council of a city to annex lands

must be considered a proper subject of a taxpayer suit if wastage of public funds is evident or certain to occur as a result of annexation. Wastage in the sense of unauthorized expenditures for services to the annexed area would be certain if the council acted without jurisdiction over the subject matter. For example, according to both statutory and decisional law in this state, the council would lack jurisdiction to act if the land to be annexed is not contiguous to the existing boundaries of the city; *Forsythe et al.* v. *The City of Hammond* (1895), 142 Ind. 505, 40 N. E. 267; or where notice of impending annexation is lacking or improperly given the affected landowners; *Town of Cicero et al.* v. *Williamson et al.* (1883), 91 Ind. 541. Attackable "wastage" in the sense hereinabove used would also occur where the annexation was clearly or patently illegal. Annexation can no longer be considered a purely discretionary act of the common council of the city. *Arnholt et al.* v. *City of Columbus* (1957), 128 Ind. App. 253, 145 N. E. 2d 660. Ind. Ann. Stat., § 48-701 (Burns 1963), required that there be publication of the annexation ordinance for two consecutive weeks after its passage. Ind. Ann. Stat., § 48-702 (Burns 1963), prohibited further annexation attempts by the council for two years after a successful remonstrance. If in a given situation these or other illegal acts taint the annexation, wastage under the ordinance would be present or certain to occur. Wastage in the same sense would occur where the annexation decision constitutes a patent abuse of discretion.

Annexation is thought to be the key to bringing efficient government and a better way of life to millions of persons. It is for this reason that the legislature has placed the power to annex in the common councils of the various cities, and such power has been considered absolute and generally free from attack. *City of Aurora* v. *Bryant et al.* (1960), 240 Ind. 492, 165 N. E. 2d 141. The great and continued interest of the public in the fruits of annexation demands that such

normal function of the city common council not be rendered impotent due to unjustified interference through taxpayer suits.

It cannot be seriously questioned that taxpayers of an annexing city who do not qualify as remonstrators can maintain a declaratory judgment suit to challenge an annexation ordinance.[2] Such suit, however, may only be allowed to proceed where the actions of the city common council in annexing specific territory are clearly or patently illegal, or where the council acts without jurisdiction over the subject matter, or where there is an unmistakable abuse of discretion in the council's decision to annex, or where wastage of public funds is present or imminent and is something more than the furnishing of the normal services and facilities attendant legal annexation, all as hereinbefore noted. This court is of the opinion that plaintiffs-appellants in the instant case did not have sufficient interest in the matter here considered to warrant consideration of their action in the trial court. The summary judgment for defendant upon paragraph II of the complaint was therefore appropriate.

Affirmed.

Buchanan, Lowdermilk and Robertson, JJ., concur.

NOTE.—Reported in 271 N. E. 2d 475.

2. Since a taxpayer's action is not a form of remonstrance, however, it cannot justify as broad an examination of applicable criteria as permitted by the former remonstrance statute insofar as such examination leads to the striking down of an annextaion ordinance.

A remonstrator has no affirmative burden. The statute required that the evidence disclose the presence of the primary determinants set forth therein in which case the judge must approve the ordinance. The court, however, was permitted to search the evidence of such conditions. It was party in order to determine the existence of such conditions. It was only where the evidence could not show such conditions to have been met that the ordinance could have been struck down.

The taxpayer in his action, on the other hand, has an affirmative burden as plaintiff to show by a preponderance of the evidence that such conditions or primary determinants are not present. Further, he must show that the absence of a condition or conditions is such as to render the action of the council a patent abuse of discretion.