CHEMICAL WASTE MANAGEMENT OF INDIANA, L.L.C., a Delaware limited liability company, and as successor in interest to Chemical Waste Management of Indiana, Inc. and TC, Inc., Appellant–Plaintiff,

v.

The CITY OF NEW HAVEN, Allen County, Indiana, Appellee–Defendant.

No. 02A03–0008–CV–299.

Court of Appeals of Indiana.

Sept. 5, 2001.

---

Mark E. Giaquinta, Robert W. Eherenman, Haller & Colvin, P.C., Fort Wayne, IN, Attorneys for Appellant.

James P. Fenton, Alan Verplanck, Eilbacher Scott, P.C., Fort Wayne, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-plaintiff Chemical Waste Management of Indiana (CWMI) appeals the trial court's denial of its motion for summary judgment on its taxpayer declaratory judgment action. CWMI also appeals the trial court's denial of its Ind.Trial Rule 41(B) motion on its annexation remonstrance petition, and contends that the trial court misapplied IND.CODE § 36–4–3–13(d)(1) and (5), the statutes governing the provision of services to the annexation area, to the undisputed facts of this case. According to CWMI, the trial court erred in denying its summary judgment motion because the appellee-plaintiff, City of New Haven's (New Haven) annexation ordinance contained illegal effective dates that rendered the annexation clearly or patently illegal, without jurisdiction, and an abuse of discretion. CWMI contends that the trial court erred in denying CWMI's T.R. 41(B) motion and in the trial court's application of I.C. § 36–4–3–13(d)(1) and (5) because New Haven failed to develop a plan to provide capital services to the annexation area consistent with the requirements of the annexation statute.

## FACTS

The undisputed facts are that the New Haven Common Council passed and adopted Annexation Ordinance X–98–16 on October 15, 1998. Section three of the Annexation Ordinance stated: "Said annexed territory shall become part of the City of New Haven on December 1, 1998." Record at 68. At the same time that the ordinance was passed, the Council adopted Resolution R–98–16 approving the fiscal plan for the proposed annexed area (annexation area). The fiscal plan set forth New Haven's proposal for providing noncapital and capital improvement services to the annexation area.

The annexation area consists of approximately eight parcels containing eighty-two acres of mostly vacant agricultural land located southwest of New Haven's current municipal boundaries. Approximately ninety-percent of the land use of the annexation area is agricultural and ten percent is residential, with the latter comprising three single-family homes. The annexation area is zoned for industrial, commercial, and business uses, and New Haven's policy was to develop it for industrial use. CWMI owns six of the eight parcels of real estate in the annexation area. Moreover, CWMI owns real estate within the municipal jurisdiction of New Haven and is, therefore, a taxpayer of New Haven.

New Haven designated territory located north of the annexation area as the comparable area in its fiscal plan. The comparable area and annexation area both have low population density, gently sloping topography, and agricultural and residential patterns of land use. The comparable area is principally agricultural land with some residential uses in the form of single-family homes and farm structures. Neither the comparable area nor the annexation area contain mobile homes, commercial or industrial buildings, institutional buildings, schools, or multi-family dwellings.

The comparable area contains a public roadway known as Seiler Road. Seiler Road has a paved service, which existed before the comparable area's annexation by New Haven. R. at 592, 725. The major roadway in the annexation area is Paulding Road, which has a gravel surface. There are no other gravel roads within the

corporate municipal boundaries of New Haven. Seiler Road services a residential subdivision east of the comparable area, whereas Paulding Road is one of the least traveled roads in the New Haven area and is presently used for agricultural purposes.[1] The comparable area has access to fire hydrants located north and south of Seiler Road, and there are municipal water lines close to the comparable area. In contrast, there are no fire hydrants in the immediate proximity of the annexation area.

Both the comparable area and the annexation area lie within Fort Wayne's water and sewer contract service area. New Haven has a contractual agreement with Fort Wayne that would permit New Haven to provide residential water service to the comparable area. This service is possible because there are municipal water lines in the vicinity of the comparable area. Nevertheless, New Haven has not extended residential water service to the comparable area. There are no municipal water lines located near the annexation area and New Haven does not have a contractual arrangement with Fort Wayne permitting New Haven to provide residential water service to that area.

New Haven's fiscal plan for the annexation area sets forth what capital and non-capital services will be provided to that area. According to the fiscal plan, New Haven will provide equivalent non-capital services to both the comparable area and the annexation area, including fire protection and emergency medical services. With respect to the extension of capital services, the fiscal plan represents a definite policy of extending capital services into the annexation area on an "as-needed" basis. Under this policy, New Haven will not extend capital services for industrial development until it receives firm commitments for development. New Haven applies the same policy to the comparable area. The fiscal plan does not provide for the extension of residential water service to the annexation area and, thus, the estimated cost of water and sewer capital improvement services for that area is zero dollars. New Haven employed the same analysis in estimating zero dollars in capital improvement service costs for fire hydrants. The fiscal plan also does not include any plan or cost projections for capital improvement services to upgrade Paulding Road to a paved surface.

On December 19, 1998, CWMI filed a statutory remonstrance against the annexation ordinance and a taxpayer declaratory judgment action seeking to have the ordinance declared illegal. On March 25, 1999, CWMI filed a motion for summary judgment on its taxpayer declaratory judgment action, seeking to have the annexation ordinance declared void. The basis of CWMI's summary judgment motion was that the annexation ordinance contained an illegal effective date that rendered the annexation clearly or patently illegal, without jurisdiction, and an abuse of discretion. In response, on May 7, 1999, New Haven filed a cross motion for partial summary judgment, asserting that an erroneous effective date cannot render the ordinance itself invalid as that date is mere surplusage and the offending provisions are completely severable from the remainder of the ordinance.

The trial court denied CWMI's summary judgment motion and granted New Haven's motion for partial summary judgment on September 20, 1999. An eviden-

---

1. Fewer than one hundred vehicles travel upon Paulding Road in a twenty-four hour period. R. at 1509.

tiary hearing on CWMI's remonstrance petition and its declaratory judgment action commenced on October 11, 1999. After New Haven presented its evidence, CWMI moved the court for judgment on its remonstrance petition pursuant to T.R. 41(B).[2] The trial court denied CWMI's T.R. 41(B) motion. On May 18, 2000, the trial court published its findings of fact and conclusions of law and entered judgment in favor of New Haven on CWMI's remonstrance petition and CWMI's taxpayer declaratory judgment action. Shortly thereafter, on June 19, 2000, CWMI filed a motion to correct errors with the trial court. The trial court denied this motion on July 27, 2000. CWMI now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

The trial court entered special findings of fact and conclusions of law pursuant to Ind.Trial Rule 52. Under that rule, issues covered by the special findings will not be disturbed unless clearly erroneous. T.R. 52(A); *Paulson v. Centier Bank,* 704 N.E.2d 482, 489 (Ind.Ct.App. 1998), *trans. denied.* We determine whether the evidence supports the findings and the findings support the judgment, and we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. *Id.*

### II. Taxpayer Declaratory Judgment

CWMI contends that the trial court erred in denying its summary judgment motion on its taxpayer declaratory judg-

ment action. Specifically, CWMI contends that because the effective date of New Haven's annexation ordinance and the effective date of the actual annexation fall within the sixty-day remonstrance period provided for by the annexation statute, the annexation ordinance is void *ab initio* and the annexation is illegal.

We note that the standard of review of a summary judgment is well settled. This court applies the same standard as the trial court. *USA Life One Ins. Co. v. Nuckolls,* 682 N.E.2d 534, 537 (Ind.1997). We do not weigh the evidence designated by the parties. Instead, we liberally construe the evidence in the light most favorable to the non-moving party. *Id.* Summary judgment is appropriate only if the pleadings and the evidence show both the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C); *Butler v. City of Indianapolis,* 668 N.E.2d 1227, 1228 (Ind.1996). Where material facts conflict, or undisputed facts lead to conflicting material inferences, summary judgment is inappropriate. *Id.*

We also note that our supreme court has determined that a taxpayer declaratory judgment suit to challenge an annexation ordinance:

> may only be allowed to proceed where the actions of the city common council in annexing specific territory are clearly or patently illegal, or where the council acts without jurisdiction over the subject matter, or where there is an unmistakable abuse of discretion in the council's decision to annex, or where wastage of public funds is present or imminent and

---

**2.** T.R. 41(B) provides, in part:

After the plaintiff or party with the burden of proof on an issue, in an action tried by the court without a jury, has completed the presentation of his evidence thereon, the opposing party, without waiving his right to

offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the weight of the evidence and the law there has been shown no right to relief.

is something more than the furnishing of the normal services and facilities attendant legal annexation.

*Montagano v. City of Elkhart,* 149 Ind. App. 283, 286, 271 N.E.2d 475, 480–81 (1971).

### A. Standing

■ As a threshold matter, we must address New Haven's contention that CWMI lacks standing to bring a taxpayer declaratory judgment action.[3] According to New Haven, one who qualifies as a remonstrator may not also bring a taxpayer action and, therefore, CWMI lacks standing to pursue its taxpayer declaratory judgment claim. Appellee's brief at 31.

■ In addressing New Haven's contention, we initially note that there are only two methods of challenging a city's annexation. *Deaton v. City of Greenwood,* 582 N.E.2d 882, 885 (Ind.Ct.App.1991). The first, remonstrance, "is the exclusive manner for landowners [of the annexation area] to obtain relief from annexation proceedings." *Id.* The second, a declaratory judgment suit, is "available only to taxpayers of the annexing city." *Id.*

New Haven relies upon *Montagano,* 149 Ind.App. 283, 271 N.E.2d 475 and *City of Muncie v. Lowe,* 705 N.E.2d 528 (Ind.Ct.App.1999), *trans. denied,* for its assertion that CWMI lacks standing to bring both a taxpayer declaratory judgment action and a remonstrance claim. The plaintiffs in *Montagano* were resident taxpayers of the annexing city but did not own land in the annexation area. 149 Ind.App. at 285, 271 N.E.2d at 477. The issue before our supreme court was

whether "resident taxpayers of a city who are neither residents nor owners of land in the area to be annexed may challenge an annexation ordinance by a taxpayer's [declaratory judgment] suit." *Id.* at 477. The court concluded that the plaintiffs had standing to bring their claim. *Id.* at 480. In direct contrast to *Montagano,* the plaintiffs in *Lowe* were property owners in the annexation area but were not taxpayers of the annexing city. 705 N.E.2d at 533. This court observed that under these circumstances, the plaintiffs' exclusive means of challenging the annexation was to file a remonstrance petition. *Id.* Inasmuch as the plaintiffs in *Montagano* and *Lowe* were not qualified as both remonstrators and city taxpayers, we reject New Haven's assertion that those cases stand for the proposition that remonstrance is the exclusive avenue of relief for one who fits both criteria.

■ Here, CWMI owns property in the annexation area as well as other real estate within New Haven's municipal jurisdiction. R. at 408. As such, CWMI qualifies as both a remonstrator and as a taxpayer of the annexing city. Because neither statutes nor case law establish that a remonstrance petition and a taxpayer declaratory judgment action are mutually exclusive, we conclude that CWMI has standing to bring both causes of action.

### B. Legality of the Annexation Ordinance and Annexation

■ CWMI contends that the illegal annexation dates contained in Section three and Section four[4] of the New Haven

---

3. For its part, CWMI argues that New Haven may not challenge its standing to bring a taxpayer declaratory judgment action because New Haven failed to raise this issue before the trial court. However, standing may be raised at any point during the litigation and, if

not raised by the parties, it is the duty of the reviewing court to determine the issue *sua sponte. In re C.W.,* 723 N.E.2d 956, 962 (Ind. Ct.App.2000).

4. The record reveals that CWMI abandoned its argument with respect to Section four at

Ordinance render the entire ordinance "null and void." Appellant's brief at 15–17. Section three contains the effective date of the annexation and Section four establishes the effective date of the ordinance. According to CWMI, because the effective date of New Haven's annexation ordinance and the effective date of the actual annexation fall within the sixty-day remonstrance period provided for by the annexation statute, the annexation ordinance is void *ab initio* and the annexation is illegal.

The legal procedures and requirements for municipal annexation of territory are set forth in I.C. §§ 36–4–3–1 to 22. I.C. § 36–4–3–11(a) provides that remonstrance to a proposed annexation by a municipality must be filed within sixty days after publication of the annexation ordinance. I.C. § 36–4–3–7(a) establishes that the annexation ordinance cannot take effect until sixty days after its publication. That statute states:

> After an ordinance is adopted under section 3, 4, or 5 of this chapter, it must be published in the manner prescribed by IC 5–3–1. Except as provided in subsection (b) or (c), in the absence of remonstrance and appeal under section 11

or 15.5 of this chapter, *the ordinance takes effect at least sixty (60) days after its publication* and upon the filing required by section 22(a) of this chapter.

I.C. § 36–4–3–7(a) (emphasis supplied). New Haven's annexation ordinance was published on October 21, 1998. Thus, according to I.C. § 36–4–3–(a), absent any remonstrance and appeal, the ordinance could come into effect, at the earliest, on December 21, 1998.

However, Section four of the annexation ordinance states: "This Ordinance shall be in full force and effect from and after its passage by the Common Council, approval by the Mayor and legal publication required by law." R. at 68. The ordinance was passed and adopted by the Common Council and approved by the Mayor on October 15, 1998, and became effective according to the language in Section four on the publication date of October 21, 1998. As such, the annexation ordinance came into effect by its own terms within sixty days of publication in contravention of I.C. § 36–4–3–7(a) and before expiration of the mandatory sixty-day remonstrance period. According to CWMI, the ordinance is void *ab initio* because New Haven does not have the power or jurisdiction to enact an

---

the trial court level. Specifically, while CWMI raised this issue during the summary judgment hearing, in its "Proposed Findings of Fact, Conclusions of Law, and Order on Motion for Summary Judgment" it proposed findings only with respect to Section three. R. at 128–35. New Haven noted in its Proposed Findings that CWMI had abandoned arguments as to Section four and did not address Section four in its Proposed Findings. R. at 150–51 n. 1. Consequently, the trial court did not address Section four in its findings of fact and conclusions of law. App. at 1; R. at 171–77. CWMI had ample opportunity to request that the trial court address Section four of the ordinance and amend its order accordingly, but it did not do so. Moreover, CWMI did not raise any error with respect to consideration of Section four in its

Motion to Correct Error and To Amend or Make New Findings of Fact. R. at 444. By failing to submit proposed findings with respect to its Section four argument to the trial court, CWMI invited any error with respect to that issue. "A party may not take advantage of an error which he commits, invites, or which is the natural consequence of his own neglect or misconduct." *Stolberg v. Stolberg*, 538 N.E.2d 1, 5 (Ind.Ct.App.1989). "Invited error is not subject to review by this court" and CWMI has waived this issue for appellate review. *See id.* However, inasmuch as our disposition of this issue is inseparable from our disposition of the issue regarding Section three of the annexation ordinance, we will address CWMI's argument with respect to Section four.

annexation ordinance containing an effective date that falls within the sixty-day remonstrance period provided for by the annexation statute.

Similarly, CWMI asserts that New Haven's annexation of the Annexation area is void because Section three of the ordinance "illegally expedites the effective date of annexation before the expiration of the remonstrance period." Appellant's brief at 21. I.C. § 36–4–3–7(a) states that an annexation ordinance is effective at least sixty days after its final publication absent a remonstrance proceeding, and I.C. § 36–4–3–8, permits a municipality to delay the effective date of the annexation beyond the remonstrance period. *Drake v. City of Fort Wayne*, 543 N.E.2d 1145, 1149 (Ind. Ct.App.1989), *disapproved of in part on other grounds by City of Hobart v. Chidester*, 596 N.E.2d 1374, 1378 (Ind.1992). Moreover, I.C. § 36–4–3–14 provides that "pending [any] remonstrance, and during the time within which the remonstrance may be taken, the territory sought to be annexed is not considered a part of the municipality." Thus, the earliest that New Haven's annexation could become legally effective was after expiration of the sixty-day remonstrance period on December 21, 1998, but New Haven could designate a later effective date. However, Section three of New Haven's annexation ordinance states that the annexed area "shall become part of the City of New Haven on December 1, 1998," which is twenty days before the legally permissible effective date. R. at 68. Thus, Section three contains an illegal effective date for the annexation.

■■■ In addressing whether the illegal effective dates render the entire annexation ordinance invalid, we note that an ordinance is presumed valid. *City of Fort Wayne v. Kotsopoulos*, 704 N.E.2d 1069, 1070 (Ind.Ct.App.1999). We also note that rules relating to statutory construction are to be applied in construing ordinances. *Hobble ex rel. Hobble v. Basham*, 575 N.E.2d 693, 699 (Ind.Ct.App.1991). A basic rule of construction is that if one section of a city ordinance or legislative act can be separated from the other sections and upheld as valid, it is the duty of the court to do so. *Id.* Where the invalid portion "is distinctly separable from the remainder and the remainder is in itself complete, sensible, and capable of execution, the invalid portion may be rejected and the remainder permitted to stand as valid." *Id.* However, where the invalid provisions of an ordinance are not distinct and separable from the other portions of the ordinance, the entire ordinance is void. *S. Ind. Ry. Co. v. City of Bedford*, 165 Ind. 272, 274, 75 N.E. 268, 269 (1905).

■■■ Here, the annexation statute contains no language mandating the inclusion of a specific effective date and, therefore, New Haven's inclusion of an effective date was purely discretionary. *See* I.C. §§ 36–4–3–1 to 22. Absent a specific effective date in the annexation ordinance, the annexation would take effect pursuant to the terms of the statute. Specifically, I.C. § 36–4–3–7(a) establishes that, absent a remonstrance, the ordinance will "take effect at least sixty (60) days after its publication and upon the filing required by section 22(a) of this chapter." Similarly, I.C. § 36–4–3–14 establishes that the annexation becomes effective after the remonstrance period or, if a remonstrance is pending, when the remonstrance is resolved. Inasmuch as the statute provides a default mechanism for determining the effective date of the ordinance and annexation, if the section of the ordinance that contains the illegal effective date can be separated from the other sections, that section will be rejected and the ordinance

and annexation will be upheld as valid. *See Hobble,* 575 N.E.2d at 699.

■ New Haven's annexation ordinance is composed of four sections. Section one describes the annexation area and declares that it is to be annexed to New Haven. Section two states that the annexation area shall become a part of Councilmanic District Number 5 of New Haven. Section three contains the illegal effective date and states that the annexed area will become part of New Haven on that date, and Section four states that the ordinance "shall be in force and effect from and after its passage by the Common Council, approval by the Mayor, and legal publication as required by law." R. at 68. Section three, containing the illegal effective date of the annexation, and Section four, which results in an illegal effective date of the ordinance, are plainly severable from Sections one and two, which are complete and capable of execution by themselves

Nevertheless, CWMI asserts that, when a city includes effective dates that fail to comply with the annexation statute, the whole ordinance fails of its purpose and is void. Appellant's brief at 23. However, CWMI has failed to establish why separating the invalid provisions will not cure the defect, and the cases it cites in support of its argument are inapposite to the case at bar. Specifically, CWMI relies upon *Southern Indiana Railway Co. v. City of Bedford,* 165 Ind. 272, 75 N.E. 268 (1905), *City of Indianapolis v. College Park Land Co.,* 187 Ind. 541, 118 N.E. 356 (1918), and *Lohm v. State,* 177 Ind.App. 488, 380 N.E.2d 561 (1978).

The ordinance at issue in *Southern Indiana Railway Co.,* is distinguishable from the New Haven ordinance at issue here, inasmuch as the ordinance in *Southern Indiana Railway Co.,* contained no separate provisions and was, therefore, incapable of severance. In *City of India-*

*napolis,* 187 Ind. at 541, 547, 118 N.E. 356, 359 (1918), our supreme court addressed, among other things, the validity of a 1915 city ordinance pertaining to the provision of gas and water services to the municipality. The court determined that if the laying of service pipes abutting property with gas mains could not be enforced under the provisions of the ordinance at issue, the whole ordinance failed of its purpose. *Id.* The invalid provision of the ordinance could not be separated from the whole to give effect to the purpose of the ordinance and, thus, the court concluded that the entire ordinance was void. *Id.* Here, the purpose of the ordinance is the annexation of designated property by New Haven. The annexation area and the Councilmanic District to which it will be assigned are clear from Sections one and two of the ordinance, and the effective annexation date is ascertainable by the terms of the statute. Thus, deletion of the invalid portion of the New Haven ordinance does not defeat the objective of the ordinance.

CWMI cites *Lohm,* 177 Ind.App. 488, 380 N.E.2d 561, to support its argument that, once New Haven voluntarily included an effective date in its annexation ordinance, it was required to choose a date beyond the sixty-day remonstrance period. Appellant's brief at 24. However, *Lohm* holds that a statute containing an invalid effective date cannot take effect until after the filing in the counties as required by the Indiana Constitution. *Lohm,* 177 Ind.App. at 491, 380 N.E.2d at 565. It does not stand for the proposition that an improper effective date renders an entire statutory enactment void *ab initio.*

Thus, we conclude that upon applying the doctrine of severability to separate Sections three and four from the ordinance, the remainder of the ordinance is sensible and capable of execution. Accordingly, the ordinance is valid and the trial

court did not err. *See S. Ind. Ry. Co.,* 165 Ind. at 274, 75 N.E. at 269.

### III. Remonstrance Petition

CWMI contends that the trial court erred in denying its T.R. 41(B) motion[5] and in its application of I.C. § 36–4–3–13(d)(1) and (5), because New Haven failed to develop a plan to provide capital services to the annexation area consistent with the requirements of the annexation statute. Specifically, CWMI asserts that nothing in § 36–4–3–13(d)(1) and (d)(5) allows New Haven to arbitrarily provide capital improvement services on an "as needed" basis and to provide a cost estimate of zero dollars for the provision of municipal water service and fire hydrants. Appellant's brief at 12–13. CWMI also contends that New Haven must provide the annexation area with a paved road and accessibility to fire hydrants and municipal water service in order to comply with the requirement of I.C. § 36–4–3–13(d)(5) that "like services" be provided to "like areas." Appellant's brief at 12.

In addressing CWMI's contention, we initially note that when reviewing the denial of a T.R. 41(B) motion, this court will reverse the trial court only where the evidence is without conflict and points unerringly to a conclusion different from that reached by the trial court. *Monk v. Peabody Coal Co.,* 530 N.E.2d 761, 763 (Ind. Ct.App.1988). In other words, parties must show that they are entitled to judgment as a matter of law. *Id.*

We also note that the power of annexation is fundamentally legislative, and the judicial role in annexation cases is limited to that prescribed by statute. *Chidester v. City of Hobart,* 631 N.E.2d 908, 910 (Ind.1994) (*Chidester II*). The burden is on the municipality at the remonstrance hearing to demonstrate its compliance with the statute. *Id.* This court's review is limited to ensuring that the municipality has not exceeded its authority and that the statutory conditions for annexation have been satisfied. *Id.* We do not reweigh the evidence; rather, we consider the evidence most favorable to the judgment of the trial court with all reasonable inferences therefrom. *Id.* However, we review issues of law de novo. *Rogers v. Municipal City of Elkhart,* 688 N.E.2d 1238, 1240 (Ind.1997). For remonstrators to prevail on appeal from an adverse trial court judgment, there must be a complete failure of proof with regard to the determinant at issue. *Id.*

According to I.C. § 36–1–3–13, a court shall order a proposed annexation to take

---

5. New Haven asserts that CWMI waived the issue sought to be raised under T.R. 41(B) because it did not present this issue to the trial court. Appellee's brief at 9–10. The issue raised on appeal, is whether CWMI was entitled to judgment as a matter of law because the undisputed evidence shows that there are no comparable areas in New Haven served by a gravel road or that are without access to residential water and fire hydrants. Appellant's brief at 36–37. However, Professor Eric Kelly testified that New Haven was not proposing to provide the annexation area with the same level of municipal services existing in the comparable area, namely a paved street and access to residential water service and fire hydrants. R. at 1314–34. In addition, at the conclusion of New Haven's case-in-chief, CWMI moved to dismiss the case because New Haven had failed to satisfy I.C. § 36–4–3–13(d)(5), by providing the same level of services to the annexation area, as provided to the comparable area, including the road, residential water, and fire hydrants. R. at 1501–1503. CWMI also made the same argument in the post-trial brief it filed with the trial court. R. at 390. "[W]here an opposing party has unequivocal notice of an issue, that issue may be considered on appeal." *Ansert ex rel. Ansert v. Ind. Farmers Mutual Ins. Co.,* 659 N.E.2d 614, 617 (Ind.Ct. App.1995). As New Haven had unequivocal notice of this issue through CWMI's evidence at trial, its motion to dismiss, and its post-trial brief, this issue is not waived.

place if certain enumerated requirements are met. These requirements include that the "municipality has developed a written fiscal plan and established a definite policy, by resolution of the legislative body, as of the date of passage of the annexation ordinance." I.C. § 36–4–3–13(d). The municipality's fiscal plan must show, among other things:

(1) The cost estimates of planned services to be furnished to the territory to be annexed.

. . . .

(5) That services of a capital improvement nature, including street construction, street lighting, sewer facilities, water facilities, and stormwater drainage facilities, will be provided to the annexed territory within three (3) years after the effective date of the annexation, in the same manner as those services are provided to areas within the corporate boundaries, that have similar topography, patterns of land use, and population density, and in a manner consistent with federal, state, and local laws, procedures, and planning criteria.

I.C. § 36–1–3–13(d). According to our supreme court:

The main concern of Ind.Code § 36–4–3–13(d)(4) and (5) is ensuring that services provided to the annexed territory are equivalent to services existing in the City. The qualification in (d)(4) and (5), that services be equivalent to those in the City with "similar topography, patterns of land use, and population density," provides a guidepost for cities in determining what services should be provided to the annexed territory. It would be unreasonable to require the City to provide services to the annexed territory that are not needed because of differences in topography, patterns of land use, and population density. For example, storm drains may be provided in neighborhoods which are very flat and have no natural drainage; such drains are not often provided in areas where the topography provides natural drainage. The idea is to provide like services to like areas.

*Chidester I,* 596 N.E.2d at 1378.

CWMI relies upon our supreme court's opinion in *Chidester I,* for its contention that New Haven's policy of providing the annexation area with certain capital improvement services on an "as needed" basis is inconsistent with the requirements of I.C. § 36–1–3–13(d)(5). Appellant's brief at 38. In that case, our supreme court determined that I.C. § 36–1–3–13(d)(5) "requires the city to spell out what services it plans to provide to the annexed area." *Chidester I,* 596 N.E.2d at 1377. According to CWMI, this requirement comports with the purpose of the fiscal plan, which is to: 1) allow landowners to make an intelligent decision about remonstrating against an annexation; 2) allow the trial court to review the annexation to ensure that the municipality is making more than "vague promises" regarding the municipal services to be provided; and 3) provide a basis for landowners to enforce a municipality's promise of services after the annexation is complete. Appellant's brief at 38; *see Chidester I,* 596 N.E.2d at 1378.

In *Chidester I,* the issue before our supreme court was whether comparisons between the annexation area and the comparable area must be set out in the city's fiscal plan. 596 N.E.2d at 1377. It was not until this case came before the court for the second time, in *Chidester v. City of Hobart,* 631 N.E.2d 908, 910 (Ind.1994) (*Chidester II*), that the court was called upon to decide whether the city's fiscal plan met the statutory requirement of providing capital and non-capital services to the annexation area equivalent to those provided in the comparable areas. In addressing this issue, our supreme court accepted the trial court's interpretation of

I.C. § 36–4–3–13(d)(5), as requiring that the city "employ the same *policy*" with regards to the capital services in the annexed area that it uses in the comparable area. *Id.* at 912 (emphasis supplied). Specifically, the court considered Hobart's policy with respect to the provision of sanitary sewers in the annexation area. *Id.* It observed that many residential areas in the City of Hobart were on a septic system or served by private sanitary facilities; that Hobart's policy was that if it was a large lot, relatively low density residential development, it would remain on a septic system unless the developer provided a sewer, and that the same policy had been adopted for the annexation area. *Id.* The court concluded that this uniform policy fulfilled the requirements of I.C. § 36–4–3–13(d)(5) that services be provided to the annexed area "in the same manner" as they are provided to the comparable area. *Id.*

In the case at bar, New Haven has adopted a policy of extending capital services into the annexation area on an "as-needed" basis. Under this policy, New Haven will not extend capital services for industrial or other development until it receives firm commitments for development. New Haven apparently employs this policy because proposed development plans do not always come to fruition, because the type and extent of the services required often depends upon the nature and scope of the development, and because it is a waste of municipal resources to provide services that are not required. R. at 1090–91, 1511. The fiscal report and evidence establishes that New Haven also makes capital improvements on an "as needed" basis in the comparable area. R. at 612–13, 724–25. As New Haven applies a uniform policy for the provision of capital services to both the annexation area and the comparable area, we conclude that New Haven has fulfilled the requirements of I.C. § 36–4–3–13(d)(5) that services be provided to the annexed area "in the same manner" as they are provided to the comparable area. *See id.* We also conclude that New Haven is not required to provide a cost estimate greater than zero for capital improvements that are not needed in the annexation area.

Nevertheless, CWMI contends that New Haven's policy of providing capital services "as needed," is insufficient to fulfill the requirements of I.C. § 36–4–3–13(d)(5) and the enforcement purpose of the statute because CWMI has no ability to enforce such an illusory promise. Appellant's brief at 41; Appellant's reply brief at 1. However, New Haven's evidence at trial established that New Haven makes its determination on the basis of a firm commitment for development, the nature of that development, and the results of feasibility studies regarding the type and scope of services required. R. at 1091–93, 1502, 1511. Accordingly, New Haven's policy is reasonable and sufficiently definite to satisfy the requirements of the statute.

CWMI also contends that New Haven must provide the annexation area with a paved road and accessibility to fire hydrants and municipal water service in order to comply with the requirement of I.C. § 36–4–3–13(d)(5) that "like services" be provided to "like areas." Appellant's brief at 12–13. In addressing this contention, we are mindful that the New Haven's determination of which capital improvement services are required must be judged "as of the date of passage of the annexation ordinance." § 36–4–3–13(d).

According to CWMI, because Seiler Road is paved, New Haven is obliged to upgrade Paulding Road from a gravel to a paved surface in order to comply with the "like services" requirement of § 36–4–3–13(d)(5). However, it is undisputed that Seiler Road services a residential subdivision, whereas Paulding Road is presently

used only for agricultural services and is one of the least traveled roads in the New Haven area. R. at 1025–26.[6] Professor Kelly, CWMI's planning expert, conceded that a gravel road is perfectly adequate for agricultural uses. R. at 1373. He also testified that the gravel surface is adequate to service the three dwellings presently located in that area. R at 1375. Further, it is undisputed that there are no present plans for industrial or other development in the annexation area, Appellant's App. at 15, and, while the annexation area is zoned for industry, New Haven's policy and plan for extending capital services to that area is based upon concrete and firm development plans, not upon zoning. Thus, when the annexation ordinance was passed, an upgraded road service was not warranted in the annexation area. Therefore, New Haven did not violate I.C. § 36–4–3–13(d)(1) and (5) by failing to provide for an upgrade to Paulding Road in its fiscal plan.

■ CWMI also asserts that New Haven must provide municipal water service and fire hydrants to the annexation area, because such services are available in the annexation area. In its fiscal plan, New Haven promises to extend the current water services "as needed" due to industrial or other development. Appellant's App. at 24. The record reveals that there were no existing plans for industrial or other development in the annexation area at the time that the ordinance was passed. Appellant's App. at 15. Further, while CWMI asserts that municipal water service is available to the comparable area, the municipal water lines lie in the vicinity of the comparable area and are used to supply nearby fire hydrants, but they have not

been extended to the residences in that area. R. at 1339, 1511. Moreover, while fire hydrants are located to the north and east of the comparable area, they are not there to serve that locale. Indeed, Chief Bennett of the New Haven Fire Department testified that it was more efficient to use the tanker trucks to suppress a fire in the comparable area than to hook up to the hydrants. R. at 675. Thus, with respect to municipal water and fire hydrants, the annexation area is not being deprived of capital services that are being provided to the comparable area and there is no current need for those services in the annexation area. Accordingly, New Haven is under no obligation to provide for the extension of municipal water and fire hydrants to the annexation area in its fiscal plan or to include a cost estimate greater than zero for those services. Thus, the trial court did not err in denying CWMI's T.R. 41(B) motion and in its application of I.C. § 36–4–3–13(d)(1) and (5).

### CONCLUSION

In conclusion, we hold that the trial court did not err in denying CWMI's motion for summary judgment on its taxpayer declaratory judgment action. We also hold that the trial court did not err in denying CWMI's T.R. 41(B) motion regarding its remonstrance petition, and in its application of I.C. § 36–4–3–13(d)(1) and (5).

Judgment affirmed.

FRIEDLANDER, J., and RILEY, J., concur.

---

6. We also note that Seiler Road was paved before the comparable area was annexed by New Haven. R. at 725. Thus, it was not paved as the result of any determination of need by New Haven. New Haven's fiscal plan for the comparable area included the maintenance of Seiler Road. R. at 725. Similarly, New Haven's fiscal plan for the annexation area provides for the maintenance of Paulding Road. R. at 613.